IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROBERT S. THORN, | ) | CIVIL NO. 08-00058 JMS/BMK |
| | ) | |
| Plaintiff, | ) | ORDER: (1) GRANTING |
| | ) | DEFENDANT BAE SYSTEMS |
| vs. | ) | HAWAII SHIPYARDS, INC.'S |
| | ) | MOTION FOR SUMMARY |
| BAE SYSTEMS HAWAII | ) | JUDGMENT ON PLAINTIFF'S |
| SHIPYARDS, INC., | ) | FEDERAL AND STATE LAW |
| | ) | DISCRIMINATION CLAIMS; AND |
| Defendant. | ) | (2) DECLINING JURISDICTION |
| | ) | OVER REMAINING STATE LAW |
| _____ | ) | CLAIMS |

**ORDER: (1) GRANTING DEFENDANT BAE SYSTEMS HAWAII SHIPYARDS, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FEDERAL AND STATE LAW DISCRIMINATION CLAIMS; AND (2) DECLINING JURISDICTION OVER REMAINING STATE LAW CLAIMS**

## I. INTRODUCTION

Plaintiff Robert S. Thorn ("Plaintiff") alleges that his employer, Defendant BAE Systems Hawaii Shipyards, Inc. ("Defendant") terminated him because he is disabled. Plaintiff asserts claims for violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Hawaii Revised Statutes ("HRS") § 378-2, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED").

Currently before the court is Defendant's Motion for Summary Judgment. Based on the following, the court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's claims pursuant to the ADA and HRS § 378-2, and declines jurisdiction over Plaintiff's remaining state law claims.

## II. BACKGROUND

**A.    Factual Background**

On January 26, 2006, Plaintiff began work as a Level 1 Mechanic for Defendant, who operates a ship repair business at the Pearl Harbor Naval Shipyard. Pl.'s Decl. ¶¶ 2-3; Perrino Decl. ¶ 2.

Prior to his employment, Plaintiff completed a voluntary "Veterans Survey" for Defendant in which he identified himself as a "Special Disabled Veteran," meaning that he is "entitled to disability compensation under laws administered by the Veterans Administration [("VA")] rated at ten (10) percent or more, or a person whose discharge or release from active duty was for disability incurred or aggravated in the line of duty." Def.'s Ex. 4, Veteran's Survey. During his service with the Navy, Plaintiff had fractured his back, Pl.'s Decl. ¶ 9, and on September 15, 2005, the VA determined that Plaintiff suffers from a degenerative joint disease in his lumbar spine, which it evaluated as 40 percent disabling. Pl.'s Ex. A, at 16; *see also* Pl.'s Ex. B (stating that as of April 16, 2008,

Plaintiff receives disability compensation due to service-connected disability rated at 30 percent or more); Pl.'s Ex. D.  Plaintiff also tore his anterior cruciate ligament ("ACL") in his left knee in 2001, had two surgeries on his left knee to repair its meniscus, and had surgery on his right knee.  Pl.'s Decl. ¶ 8.

Plaintiff passed Defendant's physical exam, identified no medical problems, and was deemed "medically fit for employment" without any "suggested work limitations and precautions."  *See* Azuma Decl., Exs. 3a, 3d.  Plaintiff also explained to Human Resources Department Manager Marsha Azuma ("Azuma") that he had problems with his knees and back, but would be able to do his job. Def.'s Ex. 21, at 22-23.  Indeed, while Plaintiff "deals with pain on a daily basis," he has "never limited himself" and his physical problems do not "stop him from doing anything."  Def.'s Ex. 17.  For example, Plaintiff has asserted that he can walk, work, and pick up to 50 pounds, did not need reasonable accommodation to do his job with Defendant, and has "never asked for special help for his disability."  *Id.*

During his orientation, Plaintiff also received Defendant's Workplace Violence Policy ("Workplace Policy"), which provides:

> Workplace violence may involve any threats of acts of violence occurring on Company premises, regardless of the relationship between the company and the parties involved in the incident.
> . . .

> Specific examples of conduct that may constitute threats or acts
> of violence under this policy include . . . [a]ggressive or hostile
> behavior that creates a reasonable fear of injury to another
> person, including threats or acts of an aggressive physical
> nature directed toward another individual[.] . . .
> Violations of this policy, by any individual, will lead to
> disciplinary action, up to and including termination.

Pl.'s Ex. F; *see also* Def.'s Exs. 3, 4.

During his employment, Plaintiff's supervisors considered him a

skilled mechanic, but expressed concern regarding Plaintiff's ability to get along

with other employees.  Cadorna Decl. ¶ 8; *see* Def.'s Ex. 8.  On May 24, 2006,

Plaintiff received a Disciplinary Notice ("Notice") for violating the Workplace

Policy when he jokingly tapped a co-worker on his hard hat with a tool.  Def.'s Ex.

7.  The Notice, signed by Plaintiff, states:

> This is the second incident of a similar nature between Robert
> and another employee.  Robert is a highly skilled employee and
> a great technical asset to the company.  However, his inability
> to work well with others may become a severe liability.  Robert
> needs to be cautious and should not touch another employee,
> particularly with a tool in a manner that may be construed to be
> an aggression.  Robert's probationary period is being extended
> by 30 days; if a similar incident occurs he will not be retained.

*Id.*  Plaintiff was also warned of his behavior when he was promoted to

Journeyman in July 2006.  Under "Remarks for any pay increase," Plaintiff's

promotion states, "Robert's skills are very good; however, he needs to understand

4

that getting along with other employees is also important.  We will not tolerate

continued disputes with other employees."  Def.'s Ex. 8.

       In August 2006, Plaintiff began work as a "leadman."  Pl.'s Decl.

¶ 16.  Plaintiff was then laid off from October 20, 2006 to November 27, 2006

during Defendant's slow season, and planned to have knee surgery during this

time.  *Id.* ¶¶ 10-13.  Plaintiff subsequently hurt his back doing yard work during

his lay-off and had to postpone his surgery until December 7, 2006.  *Id.* ¶¶ 12-14.

When Plaintiff resumed work on November 27, 2006, he told Production Leadman

Mark Hansen ("Hansen") that his back was "really hurting" and he could work

only a short period of time due to his pending surgery and subsequent recovery.

*Id.* ¶¶ 14, 17.  On November 29, 2006, Plaintiff complained that he could not lift

heavy plates due to his back condition, which angered Hansen and Production

Foreman Ernie Cadorna ("Cadorna").[1]  *Id.* ¶ 18.

       Since resuming work on November 27, 2006, Plaintiff believed that

he was a leadman and indicated this position on his timecard to receive higher pay.

*Id.* ¶ 16.  On Friday, December 1, 2006, however, Hansen told Plaintiff to stop

---

[1] In comparison, both Hansen and Cadorna assert that "[a]t no time during Thorn's
employment with BAE was I aware that Thorn had any medical impairment that prevented him
from performing his duties as a mechanic initially or as a journeyman mechanic or that required
any accommodation."  Cadorna Decl. ¶ 3; Hansen Decl. ¶ 3.

indicating that he is a leadman on his timecard because Cadorna did not need him in that position.  Cadorna Decl. ¶ 4; Hansen Decl. ¶ 4.  Plaintiff became upset because he believed Cadorna had demoted him as a result of Plaintiff's requests for accommodation.[2]  Pl.'s Decl. ¶¶ 21-23.  The parties dispute precisely what occurred next.

Plaintiff asserts that as he was clocking out, he saw Cadorna at the end of the warehouse and "yelled to Cadorna that if he had anything negative to say about me, to keep it to himself or I would file a grievance with the union against him."  *Id.* ¶ 23.  The generators were running loudly, so Cadorna walked toward Plaintiff and both men raised their voices.  *Id.* ¶¶ 23-24.  Plaintiff asserts that he never threatened Cadorna, told him that he was going to kick his ass, or kill him.  *Id.* ¶ 26.  Plaintiff was, however, cursing and grumbling to himself as he clocked out, and said to himself "I should kick his ass."  *Id.* ¶¶ 27-28.  Security Manager James Cummings heard the voices, and said "get out of the shop, cool off and come back."  *Id.* ¶ 25.

---

[2]  Plaintiff's allegations of wrongful demotion are not recited in his Complaint or his complaints to the EEOC.  *See generally* Compl.; *see also* Def.'s Ex. 15 (reciting to Hawaii Civil Rights Commission that his discrimination complaint is based on being terminated); Def.'s Exs. 16-17.

In comparison, Cadorna asserts that he heard Plaintiff yelling profanities at someone near the time clock, and Cadorna went closer to understand why Plaintiff was upset.  Cadorna Decl. ¶ 5.  As Cadorna got closer, he understood that Plaintiff was cursing at him and saying "I'm going to kick your fucking ass." *Id.*  Cadorna tried to explain that he did not need him as leadman at this time, but Plaintiff responded with more obscenities.  *Id.*  Next, Cummings came out of his office and told Plaintiff to leave the warehouse and cool off, but Plaintiff ignored Cummings' order and continued advancing toward and cursing at Cadorna.  *Id.* ¶ 6.  Cummings therefore inserted himself between Plaintiff and Cadorna and tried to calm Plaintiff down until he left the warehouse.  *Id.*; *see also* Hansen Decl. ¶¶ 4-5 (recounting similar version of events); Cummings Decl. Ex. 1 (same).

Because it was late in the day, Cadorna waited until Monday, December 4, 2006, to report Plaintiff's conduct to Production Manager Carl Perrino ("Perrino").  At 6:00 a.m., Hansen and Cadorna met with Perrino, who told them that he would conduct an investigation and asked them to return at 8:00 a.m. for a meeting with Plaintiff and Union Shop Steward Joe Waldrop ("Waldrop"). Hansen Decl. ¶ 6. Perrino Decl. ¶ 4.

In the meantime, Plaintiff returned to work and learned that his supervisors were going to have a meeting regarding the December 1 incident.

Pl.'s Decl. ¶ 32.  Around 7:00 a.m., Plaintiff reported to Nurse Philip Cornejo ("Nurse Cornejo") because his knees were bothering him.  *Id.* ¶¶ 33-34.  Because Nurse Cornejo was previously unaware of Plaintiff's upcoming surgery, he requested, and Plaintiff provided, paperwork confirming his surgery.  Cornejo Decl. ¶ 2; Pl.'s Exs. G-H.  Nurse Cornejo next met with Perrino and recommended that Plaintiff either be sent home or put on light duty for the day.  Cornejo Decl. ¶ 2; Perrino Decl. ¶ 4; *see also* Def.'s Ex. 21, at 73-74; Pl.'s Ex. I (recommending that Plaintiff observe "no long hours of standing carrying any weight over 20 pounds, no prolonged periods of walking").  Perrino agreed that it would be best to send Plaintiff home, but told Plaintiff to first come to his office at 8:00 a.m. to discuss the December 1 incident.  Perrino Decl. ¶ 4; Pl.'s Decl. ¶ 34.

At the meeting, Plaintiff, Hansen, and Cadorna each recited their version of events of the December 1 incident to Perrino.  *See* Pl.'s Decl. ¶¶ 36-38; Hansen Decl. ¶ 6; Cadorna Decl. ¶ 7.  Plaintiff asserted that he did not threaten anyone, but did say under his breath to himself that he would "kick Cadorna's ass."  Pl.'s Decl. ¶ 36.  After hearing from the three men, Perrino asked everyone to step out of his office so that he could talk with Cummings about the incident, who confirmed that Plaintiff threatened Cadorna.  Perrino Decl. ¶ 5.  Based on the statements of Cummings, Cadorna, and Hansen, Perrino believed that Plaintiff

threatened Cadorna with physical violence and given Plaintiff's history of

aggressive conduct, believed that Plaintiff's employment posed a risk of future

violent events.  *Id.* ¶ 6.  Perrino therefore had Plaintiff and Waldrop return to his

office, where he explained that Plaintiff was terminated due to this second offense

of workplace violence.  *Id.*; Def.'s Ex. 21, at 29-31.  Perrino subsequently

prepared a report recounting this meeting, which included a written statement by

Cummings.  *See* Def.'s Ex. 6.

**B.    Procedural History**

On October 22, 2007, Plaintiff filed his Complaint in the State of

Hawaii Circuit Court of the First Circuit, alleging three claims titled (1) violation

of federal law and state discrimination laws, (2) hostile work environment, and

(3) infliction of emotional distress.  On February 13, 2008, Defendant removed the

case to this court.

On September 29, 2008, Defendant filed its Motion for Summary

Judgment.  On October 16, 2008, Plaintiff filed his Opposition, and Defendant

filed its Reply on October 23, 2008.  A hearing was held on November 3, 2008.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest on mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, ---F.3d---, 2008 WL 4307451, at *4 (9th Cir. Sept. 23, 2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, ---F.3d---, 2008 WL 4570616, at *3 (9th Cir. Oct. 15, 2008) (stating that "the evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV.  DISCUSSION

### A.   Plaintiff's Discrimination Claims

Defendant argues that summary judgment should be granted because, among other reasons,[3] Plaintiff cannot establish that he is disabled within the meaning of the ADA and HRS § 378-2.  Based on the following, the court agrees.

---

[3]  Because the court grants summary judgment on Plaintiff's claims pursuant to the ADA and HRS § 378-2 on the basis that Plaintiff has not established an issue of fact that he is disabled, the court does not address Defendant's other arguments that summary judgment should be granted because Plaintiff cannot establish an issue of fact that Defendant terminated Plaintiff because of his disability, or that Defendant's reason for terminating him is pretext.

## 1.  Framework

The ADA, 42 U.S.C. § 12112(a), prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees . . . ."  Similarly, HRS § 378-2(1)(A) makes it an unlawful discriminatory practice "for any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment" because of a person's disability.

Except for an irrelevant exception, the familiar burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to claims of discrimination on account of a disability.[4]  *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 (2003) (applying *McDonnell Douglas* burden shifting framework to ADA disability discrimination claim).  Under this burden-

---

[4]  The *McDonnell Douglas* burden-shifting analysis does not apply where "the employer acknowledges reliance on the disability in the employment decision."  *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 n.10 (9th Cir. 2001).  In such case, once the plaintiff establishes a prima facie case, "the employer bears the burden of showing that the disability is relevant to the job's requirements."  *Id.*  As explained below, Plaintiff cannot make out his prima facie case, so this exception is irrelevant.

shifting scheme,[5] Plaintiff must first set forth a prima facie disability discrimination claim.  Specifically, Plaintiff has the initial burden to prove a prima facie case of discrimination that he: "(1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of [his] disability."  *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) (citing *Sanders v. Arneson Prods., Inc*., 91 F.3d 1351, 1353 (9th Cir. 1996)).  If Plaintiff puts forth his prima facie claim, the burden then shifts to Defendant to put forward a legitimate, non-discriminatory reason for its actions.  If Defendant proffers such a reason, the burden shifts back to Plaintiff to show that Defendant's reason is actually a pretext for discrimination.  *Id.* at 1093.

### 2.   *Plaintiff's Prima Facie Case: Disability*

For Plaintiff's prima facie case, the ADA defines disability with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of

---

[5]  The Hawaii Supreme Court "has adopted the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, in other types of HRS § 378-2 discrimination cases." *Schefke v. Reliable Collection Agency, Ltd.*, 96 Haw. 408, 425, 32 P.3d 52, 60 (2001).  Also, because the definitions of disability in the ADA and HRS § 378-2 are substantially identical, the Hawaii Supreme Court has expressly adopted "the analysis for establishing a prima facie case of disability discrimination under HRS § 378-2 that was established in *Sutton v. United Air Lines, Inc*., 527 U.S. 471 (1999)," and looks "'to the interpretations of analogous federal laws by the federal courts for guidance.'"  *See French v. Haw. Pizza Hut, Inc*., 105 Haw. 462, 467, 99 P.3d 1046, 1050 (2004) (quoting *Shoppe v. Gucci Am., Inc*., 94 Haw. 368, 377, 14 P.3d 1049, 1058 (2000)).  The court therefore outlines a single framework for Plaintiff's claims pursuant to the ADA and HRS § 378-2.

such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  HRS § 378-1 similarly defines disability as "the state of having a physical or mental impairment which substantially limits one or more major life activities, having a record of such an impairment, or being regarded as having such an impairment."

Defendant does not question that Plaintiff's knee and back problems constitute physical impairments, but argues that Plaintiff has not shown that these impairments substantially limit one or more of Plaintiff's major life activities.  In his Opposition, Plaintiff argues in wholly conclusory fashion that he "is significantly restricted as to the manner of duration that he can perform some major life activities," but fails to identify what major life activities were at issue.  Pl.'s Opp'n 8.  At the hearing, however, Plaintiff's counsel asserted that Plaintiff is substantially limited in the major life activities of walking, standing, and lifting, and believes that he qualifies as disabled under all three definitions.  Viewing the evidence in a light most favorable to Plaintiff, the court disagrees.

a.  *Physical impairment that substantially limits one or more of the major life activities*

Plaintiff bears the burden of showing that his impairments constitute a disability under the law.  *See Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794 (9th Cir. 2001).  To establish a fact question that Plaintiff suffers from a

"physical impairment that substantially limits one or more major life activities," Plaintiff must identify the activity at issue, explain how that activity qualifies as a major life activity, and make an individualized showing that he is substantially limited in that activity. *See Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1002 (9th Cir. 2007); *see also Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007); *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 20 (1st Cir. 2004). This inquiry is a sensitive, fact-based, individualized analysis looking "at the nature, severity, duration, and impact of the impairment." *Fraser v. Goodale*, 342 F.3d 1032, 1039 (9th Cir. 2003) (citing 29 C.F.R. § 1630.2(j)(2)(i)-(iii)).

This standard is a demanding one and the statutory terms are strictly construed. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002). The word "'major' in the phrase 'major life activities' means important," *i.e.*, "an impairment that prevents or severely restricts . . . activities that are of central importance to most people's daily lives." *Id*. at 197-98. Examples of some such activities include bathing, brushing one's teeth, doing household chores, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, reading, breathing, driving, learning, using tools, working, playing sports, and the like. *See* 29 C.F.R. § 1630.2(i); *Toyota*, 534 U.S. at 201-02; *Fraser*, 342 F.3d at 1038; *see also EEOC v. United Parcel Serv., Inc.*, 306 F.3d 794, 803 (9th Cir. 2002).

The word "substantial" means "'considerable' or 'to a large degree'" and therefore "clearly precludes impairments that interfere in only a minor way . . . from qualifying as disabilities." *Toyota*, 534 U.S. at 197.  To be substantially limited, the plaintiff must be "significantly restricted as to condition, manner or duration under which he can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j); *Toyota*, 534 U.S. at 195.

The life activities Plaintiff identified -- walking, standing, and lifting -- are generally considered major life activities.  *See* 29 C.F.R. Pt. 1630, App. § 1630.2(I).  The court therefore focuses its analysis on whether Plaintiff has established a genuine issue of fact that he is substantially limited in these activities.

The whole of Plaintiff's evidence -- as identified by Plaintiff in his Concise Statement and at the hearing -- is the following: (1) Plaintiff's Declaration stating that his left knee locks up, he has had surgery on both knees, his back bothers him, and on November 29, 2006, he complained about lifting heavy plates due to his back, Pl.'s Decl. ¶¶ 8-9, 18; (2) a report titled "MR Spine (Lumbar) Without Contrast" indicating that Plaintiff "has an L5-S1 disk extrusion and

stenosis," Pl.'s Ex. D; (3) notes from his surgeon documenting the recommendation for surgery on Plaintiff's left knee and post-operation meetings, Pl.'s Ex. E; and (4) a VA evaluation rating Plaintiff as 40 percent disabled based on "forward flexion of the thoracolumbar spine of 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. . . ." Pl.'s Ex. A, at 17; *see also* Pl.'s Opp'n 8.

All of this evidence is directed to the fact that Plaintiff has back and knee impairments, not whether and how these impairments substantially limit the major life activities of walking, standing, and lifting. While this evidence substantiates that Plaintiff has impairments, evidence of impairments alone is insufficient on its own to show that the impairments substantially limit a major life activity. *Toyota*, 534 U.S. at 198 ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment."). Missing from Plaintiff's evidence and argument is any explanation of precisely *how* Plaintiff's impairments affect Plaintiff's ability to walk, stand, and lift. For example -- Is Plaintiff limited by the length of time he can walk? How long can Plaintiff walk at a time? How long can Plaintiff stand at a time? How much can Plaintiff lift? How many repetitions can Plaintiff complete? Do any accommodations allow Plaintiff to perform the activities of

17

walking, standing and lifting?  Without specific, individualized evidence, the court

cannot determine whether Plaintiff suffers from a minor impairment or one that

significantly restricts the condition, manner and/or duration that Plaintiff can

perform these activities.[6]  29 C.F.R. § 1630.2(j); *See, e.g.*, *Thompson v. Holy*

*Family Hosp.*, 121 F.3d 537, 540 (9th Cir. 1997) (finding plaintiff who was

permanently restricted from lifting more than 25 pounds on a continuous basis,

more than 50 pounds twice a day, and more than 100 pounds once a day was not

disabled); *Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir. 1996) (finding

employee who could not jog, had trouble climbing stairs, and could not walk more

than a mile was not substantially limited in walking under the ADA); *Meling v. St.*

---

[6]  While not argued by Plaintiff, the court is aware that on December 4, 2006, Plaintiff visited Nurse Cornejo due to pain in his knees, and Nurse Cornejo recommended that Plaintiff should observe "no long hours of standing carrying any weight over 20 pounds, no prolonged periods of walking."  Pl.'s Ex. I.  To the extent Nurse Cornejo's recommendation creates a fact question that Plaintiff experienced limitations in walking, standing, or carrying any weight over 20 pounds on December 4, 2006, it still does not create a fact question that Plaintiff is disabled. Nurse Cornejo's recommendation establishes at most that Plaintiff experienced these limitations for a short period of time, which is insufficient under the ADA -- "[t]he impairment's impact must [] be permanent or long term."  *Toyota*, 534 U.S. at 198 (citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii)); *see also Sanders v. Arneson Prods.*, 91 F.3d 1351, 1354 (9th Cir.1996) (holding that a three and one-half month impairment with minimal residual effects was not substantially limiting); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 645 (2d Cir. 1998) (holding that a thirty-day hospitalization, followed by six months out of work, was not sufficient to establish a record of substantially limiting impairment); *Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1087 (10th Cir. 1999) (concluding that the plaintiff's five-day hospital stay weighed in favor of finding a substantially limiting impairment, but the impairment's short duration and lack of long term impact weighed against that conclusion).  Further, this evidence suffers from the same problems discussed below of not providing enough detail to make the individualized determination of whether Plaintiff was *significantly* restricted in these activities.

18

*Francis Coll.*, 3 F. Supp. 2d 267, 273-74 (E.D.N.Y. 1998) (finding plaintiff who could stand no more than ten to fifteen minutes was "substantially limited").

Further, to the extent Plaintiff relies on the VA determination that Plaintiff is 40 percent disabled, this determination does not create a fact question that Plaintiff is disabled within the meaning of the ADA and HRS § 378-2. VA percent ratings

> represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. For the application of this schedule, accurate and fully descriptive medical examinations are required, with emphasis upon the limitations of activity imposed by the disabling condition.

38 C.F.R. § 4.1. A VA disability rating -- based on quantifying a decrease in a veteran's earning capacity -- is a completely different inquiry and standard than that imposed by the ADA and HRS § 378-2 of whether a claimant's impairment substantially limits a major life activity.

Indeed, this difference in definitions is precisely why 29 C.F.R. Pt. 1630, App.§ 1630.2(k) cautions that such disability rating is not interchangeable with the strict definition of disability under the ADA:

The fact that an individual has a record of being a disabled veteran, or of disability retirement, or is classified as disabled for other purposes does not guarantee that the individual will satisfy the definition of "disability" under part 1630.  Other statutes, regulations and programs may have a definition of "disability" that is not the same as the definition set forth in the ADA and contained in part 1630.  Accordingly, *in order for an individual who has been classified in a record as "disabled" for some other purpose to be considered disabled for purposes of part 1630, the impairment indicated in the record must be a physical or mental impairment that substantially limits one or more of the individual's major life activities*.

(emphasis added).  Neither the VA rating of Plaintiff as 40 percent disabled nor

the evaluation itself identifies any major life activities that are affected by

Plaintiff's impairments or explains how Plaintiff is limited in those activities.  The

VA evaluation is therefore insufficient to create genuine issue of fact that Plaintiff

is disabled under the ADA.[7]  *See DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir.

---

[7]  At the hearing, Plaintiff specifically stated that he was not claiming working as a major life activity, and the court notes that the VA rating indicating that Plaintiff is impaired in his earning capacity would not support that Plaintiff is limited in the major life activity of working and/or his ability to earn money.  Where a plaintiff contends the major life activity at issue is working, he is "required to show an inability to work in a 'broad range of jobs,' rather than a specific job." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200 (2002) (quoting *Sutton*, 527 U.S. at 492).  A plaintiff "'must present specific evidence about relevant labor markets to defeat summary judgment' and 'identify what requirements posed by the class of . . . jobs . . . were problematic in light of the limitations posed on [him].'"  *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1009 (9th Cir. 2007) (quoting *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 795-96 (9th Cir. 2001)).  Plaintiff has made no such showing -- Plaintiff has not identified a broad range of jobs that he cannot work due to his impairments, or submitted any specific evidence about relevant labor markets.  *See id.* (finding plaintiff did not meet evidentiary standard where evidence did not address relevant labor markets or plaintiff's particular training, knowledge, skills, or abilities); *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir. 1997) (holding that plaintiff's "conclusory allegations" regarding limitation in working were

(continued...)

2004) (holding that VA's determination that the plaintiff had a 20 percent leg disability "is insufficient to demonstrate that DiCarlo is substantially limited in a major life activity"); *Mahon v. Crowell*, 295 F.3d 585, 592 (6th Cir. 2002) (holding that evidence that plaintiff's impairment caused a 47 percent loss of access to the job market was insufficient to establish a disability); *Lebron-Torres v. Whitehall Labs.*, 251 F.3d 236, 240-41 (1st Cir. 2001) (finding that State Insurance Fund's finding of a twenty percent disability and evidence of on-going treatment "is insufficient by itself to establish that [plaintiff] was substantially limited in the [major life activity of working]").

"[T]he ADA requires those "claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their *own* experience is substantial." *Toyota*, 534 U.S. at 198 (citation, quotation and alteration signals omitted) (emphasis added). Plaintiff has submitted no such evidence, and indeed, the only specific evidence on the record actually suggests that Plaintiff has not experienced any limitations in

---

[7](...continued)
"insufficient to withstand the motion for summary judgment"); *see also Nawrot v. CPC Intern.*, 277 F.3d 896, 903 n.2 (7th Cir. 2002) ("Nawrot has failed to identify a class of jobs or a broad range of jobs from which he is excluded and therefore cannot show that he is substantially limited in the major life activity of working."); *Lebron-Torres v. Whithall Labs.*, 251 F.3d 236, 241 (1st Cir. 2001) ("Lebron's failure to proffer any evidence specifying the kinds of jobs that her back condition prevented her from performing dooms her ADA claim.").

any major life activities.  By all accounts, Plaintiff has "never limited himself" and

his physical problems do not "stop him from doing anything."  *See* Def.'s Ex. 17.

Further, despite his counsel's assertions at the hearing, Plaintiff told the EEOC

that he can walk, work, and pick up to 50 pounds, did not need reasonable

accommodation to do his job with Defendant, and has "never asked for special

help for his disability."  *Id.*  In sum, Plaintiff has not established a genuine issue of

fact that he is substantially limited in the major life activities of walking, standing,

or lifting.

      *b.   Record of such an impairment*

"[H]aving a 'record' of a disability means either having a history of,

or having been misclassified as having, a substantially limiting impairment."

*Walton*, 492 F.3d at 1011 (citations omitted).

      Plaintiff provides no evidence of having a history of an impairment

that substantially limits any major life activity.  Although Plaintiff has submitted

evidence that he has a history of knee and back impairments, as explained above,

there is no evidence that these impairments substantially limited any major life

activity and evidence of a history of impairments alone is insufficient to establish

a fact question that those impairments substantially limit a major life activity.  *See*

*id.* (finding doctor's reports indicating that plaintiff had only one functioning ear

22

and was unable to localize sound did not create a record of impairment where

there was no genuine issue of fact that the impairment was substantially limiting);

*Coons v. Sec'y of U.S. Dept. of Treasury*, 383 F.3d 879, 886 (9th Cir. 2004)

("Although the doctor states that Coons suffers from various physical and mental

impairments, and that Coons received treatment for some of those impairments,

there is no allegation that any of the treated impairments substantially limited any

major life activity."); *Cf. Snead*, 237 F.3d at 1089 (holding that physicians notes,

letters in the record, and plaintiff's prolonged leave created a genuine issue of fact

regarding a record of impairment).

Accordingly, Plaintiff has not established a genuine issue of fact that

has a record of substantially limiting impairment.

c.    *Regarded as having such an impairment*

A person is regarded as being disabled if "(1) a covered entity

mistakenly believes that a person has a physical impairment that substantially

limits one or more major life activities, or (2) a covered entity mistakenly believes

that an actual, nonlimiting impairment substantially limits one or more major life

activities." *Sutton v. United Air Lines, Inc*., 527 U.S. 471, 489 (1999).  "As with

real impairments, . . . a perceived impairment must be substantially limiting and

significant." *Thompson*, 121 F.3d at 541; *see also Deppe v. United Airlines*, 217

F.3d 1262, 1265 (9th Cir. 2000) ("In 'regarded as' cases, the employer must perceive the individual as having an actual disability under the ADA.").

On summary judgment,

in order to state a "regarded as" claim a plaintiff must establish that the employer believes that the plaintiff has some impairment, and provide evidence that the employer subjectively believes that the plaintiff is substantially limited in a major life activity.  If the plaintiff does not have direct evidence of the employer's subjective belief that the plaintiff is substantially limited in a major life activity, the plaintiff must further provide evidence that the impairment imputed to the plaintiff is, objectively, a substantially limiting impairment.

*Walton*, 492 F.3d at 1006.  The court addresses these two inquiries in turn.

i.      Direct evidence of Defendant's subjective belief

Plaintiff has presented evidence that Defendant was aware of Plaintiff's impairments -- Plaintiff notified Defendant that he received VA disability benefits, had problems with his knees and back, and planned on having surgery on his left knee.[8]  Also, during the hearing, Plaintiff's counsel asked the court to infer that Defendant regarded Plaintiff as disabled because on November 29, 2006, Plaintiff "complained about lifting heavy plates due to [his] back condition," *see* Pl.'s Decl. ¶ 18, and Defendant subsequently demoted him.  This evidence does not carry Plaintiff's burden.

---

[8] Plaintiff presented no evidence, however, that he told Defendant that the VA rated him as 40 percent disabled or that he had previous surgeries on his knees.

The bulk of Plaintiff's evidence indicates that Defendant knew of Plaintiff's impairments, but an employer's awareness of an employee's medical condition, standing alone, is not evidence that the employer regarded the employee as disabled.  *See Walton*, 492 F.3d at 1006-07; *McWilliams v. Latah Sanitation, Inc.*, 554 F. Supp. 2d 1165, 1169 n.1 (D. Idaho 2008) (noting that there was "no evidence in the record that Defendant regarded Plaintiff's diabetes or heart condition as substantially limiting any major life activities"); *Barnes v. GE Sec., Inc.*, 2008 WL 1848131, at *5 (D. Or. Apr. 22, 2008) ("Acknowledging that plaintiff had health issues is not the same as regarding plaintiff as disabled under *Sutton*."); *Hudson v. Chertoff*, 2007 WL 2288062, at *6 (W.D. Wash. Aug. 3, 2007) (holding that fact that supervisors were aware that plaintiff needed rehabilitation to treat his injury did not create a fact question that defendant regarded him as disabled).

Further, Plaintiff's request for accommodation establishes at most that Defendant was aware that Plaintiff was temporarily injured on November 29, 2006, not that it believed that Plaintiff was substantially limited in a major life activity.[9]  Plaintiff had recently hurt his back doing yard work, and told Hansen

---

[9] Plaintiff provides no explanation of precisely what accommodation he requested, or even whether he received an accommodation.  Rather, Plaintiff's declaration merely states that he "could not lift the plates because I did not want to blow out my back" and "I was upset that I had

(continued...)

that his back was "really hurting" and he would be out for knee surgery on December 7, 2006.  Pl.'s Decl. ¶¶ 13, 17.  Plaintiff had never before requested any accommodation and there is no evidence that he requested accommodation after this date -- Hansen even requested that Plaintiff work additional days on the weekend.  *See id.* ¶ 22.  Given this context, Plaintiff's request for accommodation actually suggests that Defendant believed Plaintiff *could* work and was not substantially limited in a major life activities of walking, standing and lifting.  *See Krocka v Chicago*, 203 F.3d 507, 514-15 (7th Cir. 2000) (holding that employer did not regard plaintiff as disabled where employer allowed plaintiff to continue working without any restrictions); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 807 n.10 (5th Cir. 1997) (finding that employer did not regard plaintiff as substantially limited in working where supervisor wanted plaintiff to come back to work); *see also Winarto v. Toshiba Am. Elec. Components, Inc.*, 274 F.3d 1276, 1291 (9th Cir. 2001) ("Given the temporary nature of [employee's] injuries and

---

[9](...continued)
been demoted due to my bad back and request for an accommodation . . . ."  Pl.'s Decl. ¶¶ 18, 21. Even if Plaintiff did receive a short term accommodation, the fact that an employer provides some accommodation to an employee is not a concession that the employer views the employee as disabled.  *Thornton*, 261 F.3d at 798; *see also Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 176 (1st Cir. 2003) ("The fact that TMC assigned Benoit to the lighter work of grinding after Benoit sustained a work injury and visited a doctor shows no more than TMC's possible awareness of a temporary injury."); *Huff v. UARCO, Inc.*, 122 F.3d 374, 388 (7th Cir. 1997) ("At best, Schoolman offers evidence that shows UARCO knew that Schoolman suffered a temporary condition that minimally impaired his ability to walk.  All of the evidence shows that UARCO accommodated this temporary condition with the electric cart.").

work restrictions, the fact that [employer] had been given two notes from doctors was not enough to prove that [employer] perceived [employee] to be disabled.").

That Plaintiff was demoted shortly after requesting accommodation does not establish a fact question either.  While the timing of Defendant's demotion may raise a fact question regarding Defendant's reasons for terminating him, it does not create a fact question that Defendant perceived Plaintiff as disabled.  Missing from Plaintiff's proffer is any explanation of how the demotion establishes that Defendant believed that Plaintiff was substantially limited in a major life activity.  For example, was the position of journeyman less physically demanding such that Defendant demoted him on the belief that Plaintiff's limitations prevented him from performing the duties of leadman?  Plaintiff presented no evidence explaining the physical demands of these two positions and demotion on its own does not create a fact issue that Defendant regarded Plaintiff as disabled.  *See Huff*, 122 F.3d at 388 (holding that fact that employer demoted workers who had health problems, including plaintiff, did not create fact question that employer regarded plaintiff as disabled).  Accordingly, the court finds that Plaintiff has not carried his burden of presenting direct evidence of Defendant's subjective belief that Plaintiff is substantially limited in the major life activities of walking, standing, and lifting.

ii.     Evidence that the impairment imputed to Plaintiff is
objectively a substantially limiting impairment

Because Plaintiff failed to provide direct evidence that Defendant

regarded Plaintiff as substantially limited a major life activity, Plaintiff must show

that the impairment imputed to him is, objectively, a substantially limiting

impairment.  As explained above in Section IV(A)(2)(a), Plaintiff has presented no

evidence that his impairments are objectively substantially limiting.  Accordingly,

Plaintiff has not carried his burden of showing that Defendant regarded Plaintiff

suffering from a physical impairment that substantially limits one or more major

life activities.

In sum, Plaintiff has not established a genuine issue of material fact

that he is disabled pursuant to any of the definitions of "disability" pursuant to the

ADA and HRS § 378-2.  The court therefore GRANTS Defendant's Motion for

Summary Judgment on Plaintiff's claims pursuant to the ADA and HRS § 378-2.[10]

///

///

_____

[10]  It is unclear whether the Ninth Circuit recognizes a hostile work environment claim
pursuant to the ADA, or whether the Hawaii Supreme Court recognizes a hostile work
environment claim based on disability.  *See Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th
Cir. 2003) (expressly declining to decide whether such a claim exists).  To the extent such claims
exist, however, Plaintiff conceded during the hearing that they cannot stand if the court
determines that Plaintiff has not raised a fact question that he is disabled.  Accordingly, these
claims are dismissed for the same reasons articulated above.

**B.     Plaintiff's State Law Claims**

The court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Remaining in this action are Plaintiff's state law claims for NIED and IIED.  The court finds that the considerations of judicial economy, convenience, fairness, and comity weigh in favor of the court declining jurisdiction over these state law claims and REMANDS Plaintiff's state law claims to the State of Hawaii Circuit Court of the First Circuit.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's claims pursuant to the ADA and HRS § 378-2, declines jurisdiction over Plaintiff's remaining state law claims, and REMANDS the state law claims to the State of Hawaii Circuit Court of the First Circuit.

Because there are no claims remaining in this court, the Clerk of Court is

ORDERED to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 7, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Thorn v. BAE Systems Haw. Shipyards, Inc.*, Civ. No. 08-00058 JMS/BMK, Order: (1) Granting Defendant BAE Systems Hawaii Shipyards, Inc.'s Motion for Summary Judgment on Plaintiff's Federal and State Law Discrimination Claims; and (2) Declining Jurisdiction over Remaining State Law Claims